Exhibit A

IN THE CIRCUIT COURT OF THE 17TH JUDICIAL CIRCUIT
IN AND FOR BROWARD COUNTY, FLORIDA
CIVIL DIVISION

### CASE NO.:  CACE-25-013168

JULIENNE PIERRE and
CARLINE FRANCISQUE As
Personal Representative of the
ESTATE OF LUC D. PIERRE,
Deceased,

v.

BANK OF AMERICA, N.A., a foreign
corporation doing business in Florida,
and MERRILL LYNCH, PIERCE,
FENNER & SMITH, INC.,  a foreign
corporation doing business in Florida,

        Defendants.

_____|

### COMPLAINT

Plaintiffs, JULIENNE PIERRE and CARLINE FRANCISQUE, as Personal

Representative of the ESTATE OF LUC D. PIERRE, bring this action for damages against

Defendants BANK OF AMERICA, N.A., a foreign corporation doing business in Florida, and

MERRILL LYNCH, PIERCE, FENNER & SMITH, INC.,  a foreign corporation doing business

in Florida. Plaintiffs make the following allegations based upon information and belief.

### I.  INTRODUCTION

1.      This action arises out of the mismanagement and reckless actions and inactions by

agents and representatives of BANK OF AMERICA, N.A., (hereinafter, "BOA"), and MERRILL

LYNCH, PIERCE, FENNER & SMITH, INC., d/b/a MERRILL (hereinafter, "MERRILL").

2.      Between December 2020 and May 2021, Defendants participated and assisted in causing financial injuries to the Plaintiffs, LUC D. PIERRE, ("Decedent"), and JULIENNE PIERRE, in an amount in excess of $100,000.00, representing their life savings they earmarked to fund their retirements.

3.      At all times material, Plaintiff JULIENNE PIERRE and LUC D. PIERRE are or were "elderly" as defined by Florida law (Fla. Stat § 825.104[1]).

4.      On August 29, 2001, Plaintiff JULIENNE PIERRE and Decedent purchased their homestead property located at 630 NW 37th Street, Deerfield Beach, FL 33064. They moved to the said property and both resided there until August 25, 2020 when Decedent passed.[2] (See Ex. 1)

5.      On October 17, 2005, Plaintiff JULIENNE PIERRE and her husband, LUC D. PIERRE, together as husband and wife, purchased another parcel of real property located at 212 SW 1 Court, Units #1-3, Pompano Beach, FL 33060. (See Ex. 2)

6.      Plaintiff JULIENNE PIERRE and husband, LUC D. PIERRE, purchased this second property as an investment in order to generate income for them to fund their retirement. The investment property was a triplex, each unit to be leased as residential dwelling. The tenants' monthly rents provided Plaintiffs a steady stream of supplemental income.

7.      LUC D. PIERRE suffered with dementia and other mental problems, along with

---

[1](4) " 'Elderly person' means a person 60 years of age or older who is suffering from the infirmities of aging as manifested by advanced age or organic brain damage, or other physical, mental, or emotional dysfunctioning, to the extent that the ability of the person to provide adequately for the person's own care or protection is impaired." Fla. Stat. § 825.101.

[2]The property continues to be Julienne Pierre' primary homestead residence.

several other serious illnesses. As of August 19, 2020, following a visit to the Emergency Room and his subsequent admission at Broward General Hospital, Mr. Pierre's chart at Broward General Hospital contains the following diagnostic information: "Alzheimer disease Bradycardia, sinus; Cholesterol; Dementia; Diabetes, and HTN (hypertension)."  Prior to that hospital admission, the degree of his diminished capacity got to the point where the Florida Department of Motor Vehicles revoked his driving privileges. The revocation of driving privileges had a huge impact on the family since Plaintiff, JULIENNE PIERRE, did not drive and relied on her husband for transportation.

8.      As LUC D. PIERRE's health became diminished, the couple began to face financial hardships. For one, they were unable to pay the mortgage on their homestead residence. The homestead eventually went to foreclosure proceedings due to non-payment. At that time they owed about  $60,000.00, on the homestead that was now in foreclosure.

9.      In order to save their primary house from a loss due to foreclosure, they decided to sell their investment property (the triplex located at 212 SW 1 Court, #1-3, Pompano Beach, FL 33060), and use the sales proceeds to pay off the mortgage on their homestead property. The remainder of the sales proceeds would be deposited in the couple's BOA account.

10.     On March 27, 2020, the couple was able to sell the investment property for Three Hundred Ten Thousand Dollars (US $310,000.00). (See Ex. 3). They netted $192,479.79, from the sale. (See Ex. 4)

11.     They deposited the netted amount in their BOA joint account that was titled, "LUC D. PIERRE and JULIENNE PIERRE." (See Ex. 5)

12.     Due to LUC D. PIERRE's health and medical condition at the time and the

revocation of his driving privileges, Mr. Pierre asked his niece, Junette Leo, to assist him by transporting him when he needed to the banking or to run other errands. Ms. Leo, at some point during May 2020, added her name to the BOA account without Plaintiff JULIENNE PIERRE's authorization. Now the BOA joint account that was once titled under the couple's names was changed to include another person, to wit:  Luc D. Pierre, Julienne Pierre and Junette Leo.

13.    On May 20, 2020, Junette Leo drove Decedent to BOA in order to send a wire transfer to PHH Mortgage in the amount of $66,708.29, to pay and satisfy the first mortgage on the couple's homestead property that was being foreclosed. Upon payment and satisfaction of the first mortgage, the remaining balance of the sales proceeds ($126,127.91) were deposited into the BOA account.

14.    On June 19, 2020, Junette Leo caused BOA to transfer $100,000.00, out of the Plaintiff and Decedent's savings account at BOA to open a Certificate of Deposit ("CD"). Junette Leo told Plaintiff JULIENNE PIERRE that Decedent had moved the funds by opening a one-year CD and that Plaintiff JULIENNE PIERRE was a named beneficiary on the CD account.

15.    The money Plaintiffs had saved for retirement by working all their lives was gone in a matter of months, thanks to Defendants' violation of their duties and responsibilities under Chapter 415, Fla. Stats., titled "Adult Protective Services Act." [3]

---

[3]"(2) The Legislature recognizes that there are many persons in this state who, because of age or disability, are in need of protective services. Such services should allow such an individual the same rights as other citizens and, at the same time, protect the individual from abuse, neglect, and exploitation. It is the intent of the Legislature to provide for the detection and correction of abuse, neglect, and exploitation through social services and criminal investigations and to establish a program of protective services for all vulnerable adults in need of them. It is intended that the mandatory reporting of such cases will cause the protective services of the state to be brought to bear in an effort to prevent further abuse, neglect, and exploitation of vulnerable adults. In taking this action, the Legislature intends to place the fewest possible restrictions on

16.     Defendants' representatives across two branches (along with its inadequate policies) failed to protect Plaintiffs JULIENNE PIERRE and LUC D. PIERRE when LUC D. PIERRE transferred $100,000.00 from the BOA joint savings account to a MERRILL investment account product with his niece, Junette Leo. Defendant BOA's employee(s) and/or agent(s) assisted with LUC D. PIERRE's unilateral withdrawal of the $100,000.00 from the couple's joint savings account.  Furthermore, Defendant MERRILL's employee(s) and/or agent(s) also assisted with the opening of a MERRILL investment product account with Junette Leo as the primary account holder and LUC D. PIERRE as the secondary account holder and JULIENNE PIERRE as the beneficiary.

17.     Prior to June 19, 2020, Plaintiffs had not maintained an investment account as husband and wife or with Junette Leo. The money in the MERRILL investment account came from the Plaintiffs' proceeds from the sale of their investment property which they had kept in their joint account at BOA.

18.     The sudden activity on Plaintiffs' joint account at BOA strongly suggested the financial exploitation of an elder that BOA's own website states is the most common form of elder abuse.

19.     Nonetheless, and despite Defendants' assurances to customers, like Plaintiffs JULIENNE PIERRE and LUC D. PIERRE, that their fraud prevention "policies are constantly

---

personal liberty and the exercise of constitutional rights, consistent with due process and protection from abuse, neglect, and exploitation. Further, the Legislature intends to encourage the constructive involvement of families in the care and protection of vulnerable adults." Fla. Stat. § 415.101.

evolving to stay ahead of new strategies used by fraudsters"[4] that they offer "multiple layers of security protection,"[5] and "continuously monitor [customer] transactions for suspicious activity,"[6] not one of the numerous agents of the company, including those who personally completed the fraudulent transaction and observed the sudden onslaught of irregular activity, reported that financial elder abuse may have occurred, delayed (or even questioned) the transaction, or prevented them from happening.

20.     In violating their own policies and procedures, Defendants knew or should have known that their actions were likely to be harmful to Plaintiffs.

## II.     JURISDICTION AND VENUE

21.     This action is for money damages in an amount in excess of $100,000.00, excluding attorney fees, costs and interest.

22.     This Court has jurisdiction over Defendants BOA and MERRILL, as both are authorized to do and are doing business within and throughout the state of Florida.

23.     Venue is proper in the Seventeenth (17th) Judicial Circuit in and for Broward County, Florida, in that a substantial portion, if not all, of the acts or omissions giving rise to the claims in this Complaint occurred in this Broward County, Florida.

## III.     PARTIES

24.     At all relevant times, Plaintiffs, JULIENNE PIERRE and CARLINE

---

[4]https://www.bankofamerica.com/security-center/faq/protecting-information/

[5]. Id.

[6].https://www.bankofamerica.com/security-center/understand-merchant-compromise/

FRANCISQUE, as Personal Representative of the ESTATE OF LUC D. PIERRE, are/were residents of Broward County, Florida.

25.     Defendant BOA is one of the largest banking institutions in the United States that does significant business within and throughout the state of Florida, including Broward County.

26.     Defendant MERRILL is a large investment and wealth management company that is a division of BOA. MERRILL does significant business within and throughout the state of Florida, including Broward County.

27.     Plaintiffs allege that at all times relevant to the events giving rise to this action, each Defendant was acting as an agent or joint venturer of the other. Plaintiffs further allege that at all times relevant to those events, each Defendant was acting within the course and scope of that agency or joint venture at the direction of or with the full knowledge, permission, or consent of the other Defendant. In addition, each of the acts or omissions of each Defendant was made known to, and ratified by, the other Defendant.

28.     There are or may be several individuals and/or entities whose true names and capacities are currently not known to Plaintiffs. Evidence may come forth that others are legally responsible and liable to Plaintiffs to the extent of the liability of the named Defendants. Plaintiffs will seek leave of the Court to amend this Complaint to reflect the names and capacities of other potential Defendants when such identities and capacities become known. Plaintiffs reserve the right to amend this claim pursuant to Fla. R. Civ. P. 1.190 with leave of the Court to add and/or amend potential defendants.

## IV.     FACTUAL ALLEGATIONS

### A.     Plaintiffs Saved for Retirement

29.     Plaintiffs, JULIENNE PIERRE and LUC D. PIERRE moved to south Florida from Haiti. Plaintiff JULIENNE PIERRE worked as a housekeeper/maid in the hotel industry and did other odd jobs, in order to provide for her family.

30.     For over 20 years, Plaintiff JULIENNE PIERRE worked at a local hotel as a maid, often working a 12-hour day shifts involving daily commutes to and from work by a one-to-two hour bus ride since she did not drive. She normally worked for minimum wage due to her lack of education and inability to communicate in the English language.

31.     During their lifetime, Plaintiffs spent little money, living a frugal existence. However, they did plan for the future by saving for retirement whatever they could at first and then by investing the profits from the sale of their investment property. Prior to the sale of the investment property, however, they collected rents from tenants at the property. These rents helped supplement their savings for retirement.

32.     In 2004, Plaintiff, JULIENNE PIERRE had to quit her job to help her husband, who was now suffering from dementia. Additionally, Junette Leo, who was  LUC's niece, began to help the Plaintiffs due to LUC D. PIERRE'S condition and JULIENNE's inability to read and write English.

33.     Plaintiffs continued to live frugally and planned to use the $100,000.00 from the sale of the investment property to supplement their retirement savings.

34.     Tragically, on August 25, 2020, Plaintiff LUC D. PIERRE died suddenly while an in-patient at Broward General Hospital. Plaintiff JULIENNE PIERRE had Junette Leo take her to BOA so she could withdraw money from their joint account to pay for her husband's funeral expenses, only to learn that she no longer had any money in the BOA joint bank account.

35.     According to Junette Leo, Decedent opened a CD with the retirement money with her and Plaintiff JULIENNE as the beneficiaries of said account. So JULIENNE asked for the money and again LEO told her that CD could not be broken at that time. However, as it turned out, there was no CD. The $100,000.00 was invested in an investment account with BOA.

36.     Shortly after the death of LUC D. PIERRE, Ms. Leo closed the investment account and moved the money to a different bank which account was exclusively under Ms. Leo's ownership and control.

37.     Decedent and JULIENNE PIERRE were groomed and deceived by Ms. Leo, whom they believed was helping them by taking LUC to the bank, to his medical appointments, and to run errands. However, Junette Leo was helping herself.

38.     Caught up completely in Leo's pretending to be helping them, Leo and Decedent walked into a local BOA branch office in Fort Lauderdale. With the help of a BOA employee, Decedent transferred $100, 000.00 from the BOA joint savings account to open a new investment account with Ms. Leo who was not his wife. Upon reviewing Plaintiffs' bank account information and their long history of diligently saving, Defendant BOA employee knew or should have known that the $169,000.00 from the Plaintiffs's account was just deposited from a closing and the $129,000.00 balance was left in the account. Yet, Ms. Leo convinced Decedent to take $100,000.00 from the savings account to open an investment account.

39.     Said employee suggested that Plaintiff speak with the on-site MERRILL representative to open an investment account. That BOA employee called over the MERRILL who met with LUC and convinced him to transfer over $100,000.00 from the joint savings account to a MERRILL investment account that same day.

**B.**    **Defendants Knew or Should Have Known that Plaintiffs Were Victims of Financial Abuse**

40.    Plaintiffs banked with BOA (and its wholly acquired predecessor at the same branch location) for more than 20 years. In that time, they never set up an investment account for $100, 000.00 or even had a balance of $100,000.00 in their account.

41.     Plaintiffs' history at BOA consisted of their savings, but by 2019, they had little to no savings. Defendant BOA knew this.

42.    By 2020, BOA knew that Decedent and JULIENNE were both elderly, under the definition of "Elderly" found in Fla. Stat.§ 825.103(3)).

**C.**    **Defendants Violated Their Policies and Assurances to Monitor Transactions for Suspicious Activity, Especially Those Involving Elderly Customers**

43.    At all relevant times, Defendants knew that elderly individuals are especially susceptible to financial fraud and that financial elder abuse comprise more than $37 billion in losses each year (according to the Consumer Financial Protection Bureau). As explained by BOA on its website, "recent studies suggest that financial exploitation - the illegal or improper use of an older adult's funds, property or assets - is the most common form of elder abuse."[7]

44.    Even more, BOA lists tell-tale signs, or "red flags," explaining that victims of financial scams may be "instructed not to trust BOA, or to respond to questions in untruthful ways" and "pressured to send money."[8]

45.    Likewise, BOA promises customers that its "policies are always evolving

---

[7].https://www.bankofamerica.com/signature-services/elder-financial-services/

[8].https://www.bankofamerica.com/security-center/avoid-bank-scams/

to stay ahead of new strategies used by fraudsters" via "multiple layers of security protection."[9]

46.     Most notably, these are BOA's promises to protect customers from fraud: "Here are some of the ways we protect you:  Keeping your personal and financial information protected and secure through responsible information collection and processing. Protecting against threats with an award-winning cybersecurity team that delivers comprehensive security round-the-clock. 24/7, real-time monitoring for suspicious account activity. Alerting you to potential fraud through the mobile app, text alerts, email or phone."[10]

47.     BOA's website specifically states that "[f]raud protection is not just for credit cards, but can also affect common banking services and wire transfers. That's why BOA protects your information through the use of banking services safeguards."[11]

48.     MERRILL identifies elders as persons vulnerable to abuse and exploitation and has a section dedicated to elder protection: "Strategies to Prevent Elder Abuse and Financial Abuse."[12] In fact, MERRILL's website identifies abuse of elders by family members as a reality to be on guard about:  "Family fraud: Perhaps the most distressing form of fraud involves other family members. Problems may start innocently, when a son or daughter gains control of a retired parent's accounts to help pay bills. After a while, the line between the finances of the parent and

---

[9].https://www.bankofamerica.com/security-center/faq/data-compromise/

[10]https://www.bankofamerica.com/security-center/bank-fraud-prevention/

[11]Id.

[12].https://www.ml.com/articles/is-a-con-artist-targeting-someone-you-love.html

the child may become blurred and the temptation to dip into the funds becomes irresistible. When the parent dies, other siblings could find that their expected inheritance has vanished."[13]

49.     Further, MERRILL offers "The MERRILL Edge Fraud Protection Guarantee" for MERRILL account holders, which provides that MERRILL " will reimburse [customers] for quantifiable monetary losses that occur... due to unauthorized third party activity."[14]

50.     BOA and its agents and representatives, including the on-site MERRILL advisors and representatives, is and has been a mandated reporter of suspected financial abuse of an elder, such as Plaintiffs, as defined by the current version of Florida Elder Abuse Statutes Chapters 415 and 825.

**D.     Defendants Knew or Should Have Known Their Actions and Inactions were Likely to be Harmful to Plaintiff**

51.     In violation of their own fraud prevention policies and their failure to monitor Plaintiff's transaction for suspicious activity, beginning on December 3, 2020 and continuing in rapid succession through February 25, 2021, BOA did or failed to do the following:

a.     Its employee at its Fort Lauderdale Branch assisted Decedent and Junette Leo;

b.     The BOA employee assisted Ms. Leo in putting her name on the Plaintiffs' bank account;

c.     Ms. Leo's name appeared on Plaintiffs' account, yet BOA does not have an

---

[13] Id.

[14] .https://www.ml.com/privacy-and-security-center/myMERRILL -fraud-protection.html

account signature card with Junette Leo's name and signature;

d.     MERRILL opened the investment account under Ms. Leo's name by transferring $100, 000.00 from the Pierre's BOA account.

53.     On June 20, 2020, the MERRILL investment account was opened with Junette Leo as a primary party and LUC D. PIERRE, as a Joint Tenant with Rights of Survivorship.

54.     At the time Ms. Leo, who was only 35 years old, stated that she was an executive making between $200,000.00 and 225,000.00 per year and MERRILL did nothing to verify her background, including the amount and source of her income, her employment status, her assets and the knowledge and consent of Plaintiff JULIENNE PIERRE.

53.     The MERRILL representative noted that LUC D. PIERRE's marital status as **widowed**, yet the funds were being taken from a joint account under the names of LUC D. PIERRE and his wife JULIENNE PIERRE.

54.     MERRILL's information about LUC D. PIERRE was in conflict in that it showed him to be a retired 75 years old who was employed as an active bakery manager.  It also reflected that LUC retired in January 2007 from Publix Supermarket. These discrepancies and inconsistencies raised "red flags".

55.     LUC D. PIERRE and JULIENNE PIERRE's investment assets totaled $125,000 to 140,000.00. However, the MERRILL representative took $100,000.00 of their savings to put in investment account. One of the many errors by MERRILL was to ignore the fact that the investment product clearly exceeded the Plaintiffs' risk tolerance for investment. In order words, Eighty percent (80%) of Plaintiffs' investment assets were used for the MERRILL investment product.

56.     By July 2020, Plaintiffs' savings account was drained. With nowhere else to go, JULIENNE turned to the MERRILL account that was opened a few months earlier.

57.     None of this banking activity, highly unusual based on Plaintiffs' elderly age and their long-term established banking history at BOA, was monitored, flagged, reported as suspicious, or prevented by the personnel at BOA and MERRILL involved in effectuating the wire transfers, cash withdrawals and cash advances.

58.     Defendants knew or should have known that the activity constituted financial elder abuse and exploitation, as defined and outlined on their own websites.

59.     Defendants knew and should have known that by failing to follow their own policies, including failing to continuously monitor Plaintiffs' account for suspicious or otherwise irregular activity, Plaintiffs would be harmed.

60.     Because of Defendants' repeated failure to provide Plaintiff with the same protection it promises all of its customers, Plaintiff has lost her entire retirement savings.

### V.     CAUSES OF ACTION
### FIRST CAUSE OF ACTION
### Violation of Chapter 415, "Abuse, Neglect and Exploitation
### of Elderly Persons and Disabled Adults
### (Against Defendants)

61.     Plaintiffs incorporate by reference the allegations in paragraphs 1-60, inclusive, as if they were set out in full herein.

62.     At all times herein mentioned, Plaintiffs were elderly within the meaning of the Chapter 415, Florida Statutes. Defendants knew or should have known Plaintiffs were elderly. Because of their age, Plaintiffs were substantially more vulnerable to the deceptive

taking of their retirement savings and assets.

63.     Defendants promised customers, including Plaintiffs, that their fraud prevention "policies are always evolving to stay ahead of new strategies used by fraudsters"[15] via "multiple layers of security protection,"[16] and by "continuously monitoring [customer] transactions for suspicious activity."[17]

64.     Further, Defendants are mandated reporters of suspected financial abuse of an elder adult pursuant to Fla. Stats. § 415.104, were in direct contact with Plaintiffs, reviewed Plaintiff's financial documents, records, and transactions in connection with providing financial services to her, gave investment and banking advice, and who, within the scope of their professional practice, observed, and knew that her sudden, suspicious, and highly unusual banking activity reasonably appeared to be financial abuse.

65.     Defendants observed and had knowledge of behavior and unusual circumstances and transactions that would lead an individual with adequate training or experience, based on the same facts, to form a reasonable belief that Plaintiffs were the victim of financial abuse of an elder.

66.      Defendants own policies dictate for the continuous monitoring of such suspicious activity.

67.     Due to Defendants' policies, knowledge and expertise, the failure to identify, report, prevent or delay the suspicious transfers of Plaintiffs' retirement money from December

---

[15].https://www.bankofamerica.com/security-center/faq/protecting-information/

[16]. *Id.*

[17].https://www.bankofamerica.com/security-center/understand-merchant-compromise/

2020 to May 2021, Defendants knowingly or unwittingly assisted in the taking of Plaintiffs'
retirement savings for a wrongful purpose, that is, by someone with the intent to defraud them as
vulnerable elderly customers.

68.     Defendants knew, or should have known, that their wrongful conduct was likely
to be harmful to Plaintiffs.

69.     By performing the acts and inactions set forth above, Defendants are liable for
financial abuse and exploitation of an elder.

70.     As a legal result of Defendants' conduct herein alleged, Plaintiffs have suffered
damages, including, without limitation, general and economic damages, in an
amount according to proof at time of trial.

71.     The actions taken by Defendants set forth above were in all respects
reckless, fraudulent, oppressive, and/or malicious, and manifested conscious disregard
for the rights of Plaintiffs.

72.     Plaintiffs are entitled to reasonable attorney's fees and costs pursuant to Fla. Stat.
§ 415.1111, which states, in part:  "A party who prevails in any such action may be entitled to
recover reasonable attorney's fees, costs of the action, and damages."

**WHEREFORE**, Plaintiffs, JULIENNE PIERRE and CARLINE FRANCISQUE, as
Personal Representative of the ESTATE OF LUC D. PIERRE, respectfully request the Court to
enter judgment in each of their favor and against Defendants BANK OF AMERICA, N.A., and
MERRILL, A BANK OF AMERICA COMPANY for an award of the following relief:

a.     Compensatory damages in an amount according to proof;

b.     Costs of suit herein incurred;

c.      Pre- and post-judgment interest at the maximum legal rate;

d.      For attorneys' fees; and,

e.      For such other relief as the Court may deem just and proper.

**SECOND CAUSE OF ACTION**
**NEGLIGENCE**
**(Against Defendants)**

73.      Plaintiffs incorporate by reference the allegations in paragraphs 1-60, inclusive, as if they were set out in full herein.

74.      At all relevant times, Defendants had a duty to protect customers from fraud (as they advertised on their website[18]).

75.      Defendants breached their duties when their agents repeatedly invested, transferred, withdrew, and took out cash advances using Plaintiff's funds, without following their own policies for fraud monitoring, prevention and protection, failing to conduct any meaningful inquiry into the suspicious transactions, and failing to comply with mandated reporting mechanisms, or otherwise protecting Plaintiff and her hard-earned funds.

77.      At all times, Plaintiff relied completely on Defendants to utilize their skills and abilities as bankers and investment advisors in protecting, handling and investing Plaintiff's funds.

78.      It was reasonable for Plaintiff to have relied on Defendants in protecting,

---

[18].*See* https://www.bankofamerica.com/security-center/faq/protecting-information/;
https://www.bankofamerica.com/security-center/understand-merchant-compromise/;
and https://www.ml.com/privacy-and-security-center/protecting-financial- transactions.html

managing, transferring, and investing her funds, as a longtime customer of BOA,

because Defendants promise customers that they "continuously monitor [customer

transactions for suspicious activity] and BOA and MERRILL  agents and representatives

79.     As a direct and proximate result of the negligence of Defendants, Plaintiff

has suffered substantial damages, the exact amount of which will be proven at trial, but

**WHEREFORE**, Plaintiffs, JULIENNE PIERRE and CARLINE FRANCISQUE, as

Personal Representative of the ESTATE OF LUC D. PIERRE, respectfully request the Court to

enter judgment in each of their favor and against Defendants BANK OF AMERICA, N.A., and

MERRILL, A BANK OF AMERICA COMPANY for an award of the following relief:

a.      Compensatory damages in an amount according to proof;

b.      For such other relief as the Court may deem just and proper.

### THIRD CAUSE OF ACTION
### Breach of Fiduciary Duty
### (Against MERRILL , A BOA COMPANY)

80.     Plaintiffs incorporate by reference the allegations in paragraphs 1-60 as if

they were set out in full herein.

81.     At all relevant times, MERRILL and its agents owed fiduciary duties to

Plaintiffs by virtue of the trust reposed in it by Plaintiffs with respect to the management

and investment of Plaintiffs' capital. MERRILL's fiduciary duties to Plaintiffs included a

duty of utmost loyalty, good faith and candor. As Plaintiffs' fiduciary, MERRILL also had

a duty to refrain from taking actions detrimental to Plaintiffs' interests, financial or

otherwise.

82.     Plaintiffs allege that MERRILL breached its fiduciary obligations to Plaintiffs

by undertaking to advise Plaintiffs regarding financial matters, assisting to transfer tens of thousands of dollars into and then immediately out of a MERRILL investment fund, and failing to fulfill its reporting requirements pursuant to Fla. Stat. § 415.1034, despite reviewing Plaintiffs' accounts and giving investment advice to LUC D. PIERRE.

83.     On information and belief, MERRILL  financially benefitted from its solicitation and sale of a MERRILL investment product to Plaintiffs.

84.     As a direct and proximate result of MERRILL's breaches of fiduciary duty, Plaintiffs suffered substantial damages, the exact amount of which will be proven at trial, but which exceeds the jurisdictional minimum of this Court.

85.     The conduct of MERRILL and its agent(s) was gross, reckless and in bad faith or with willful disregard of its duties and of the rights and interest of its clients. MERRILL assisted in the taking of Plaintiffs' funds for its financial gain and profit and failed to initiate or ensure protections to prevent fraud from occurring.

**WHEREFORE**, Plaintiffs, JULIENNE PIERRE and CARLINE FRANCISQUE, as Personal Representative of the ESTATE OF LUC D. PIERRE, respectfully request the Court to enter judgment in each of their favor and against Defendants BANK OF AMERICA, N.A., and MERRILL, A BANK OF AMERICA COMPANY for an award of the following relief:

a.     Compensatory damages in an amount according to proof;

b.     Costs of suit herein incurred;

c.     Pre- and post-judgment interest at the maximum legal rate;

d.     For attorneys' fees; and,

5.     For such other relief as the Court may deem just and proper.

## VII.   DEMAND FOR JURY TRIAL

Plaintiffs demand trial by jury on all issues so triable.

Respectfully submitted,


**Law Offices of James Jean-Francois, P.A.**
Duty Free Americas, Suite 211
6100 Hollywood Boulevard
Hollywood, FL   33024
Telephone: (954)987-8832
Fax: (954)987-2622
e-address:      *jamesjeanfrancoisesq@hotmail.com*
                *jjonlaw@hotmail.com*


By:   James Jean-Francois     /s/
      **James Jean-Francois, Esq.**
      FBN: 0495115
      Counsel for Plaintiff

# EX. "1"



INSTR # 101347625
OR BK 32141 PG 1755
RECORDED 09/21/2001 02:15 PM
COMMISSION
BROWARD COUNTY
DOC STMP-D     749.00
DEPUTY CLERK 1006

This Instrument Prepared by and Return to:
**Michael O. Albertine, Esq.**
LANDMARK TITLE SERVICES, INC.
2200 WEST COMMERCIAL BOULEVARD
FORT LAUDERDALE, FLORIDA  33309

Property Appraisers Parcel Identification (Folio) Numbers:
**18214-04-14600**
Grantees SS #s:

_____SPACE ABOVE THIS LINE FOR RECORDING DATA_____

**THIS WARRANTY DEED**, made the **29th** day of **August, 2001** by **WILLIAM D. SEAGRAVES** and **DONNA M. SEAGRAVES, HUSBAND and WIFE** herein called the grantors, whose post office address is **P.O. BOX 363, ANALOMINK, PA 18320**, to **LUC DUCHANGE PIERRE** and **JULIENNE PIERRE, HUSBAND AND WIFE** whose post office address is **630 NW 37TH STREET, POMPANO BEACH, FL 33064**, hereinafter called the Grantees: (Wherever used herein the terms "grantor" and "grantee" include all the parties to this instrument and the heirs, legal representatives and assigns of individuals, and the successors and assigns of corporations)

**W I T N E S S E T H:** That the grantors, for and in consideration of the sum of TEN AND 00/100'S ($10.00) Dollars and other valuable considerations, receipt whereof is hereby acknowledged, hereby grants, bargains, sells, aliens, remises, releases, conveys and confirms unto the grantee all that certain land situate in BROWARD County, State of Florida, viz:

> **LOT 6, BLOCK 23, of BONNIE LOCH, SECTION 1, according to the plat thereof, as recorded in Plat Book 51, Page 5, of the Public Records of Broward County, Florida.**
>
> **Subject to easements, restrictions and reservations of record and to taxes for the year 2001 and thereafter.**

**TOGETHER,** with all the tenements, hereditaments and appurtenances thereto belonging or in anywise appertaining.

**TO HAVE AND TO HOLD,** the same in fee simple forever.

**AND,** the grantors hereby covenant with said grantees that the grantors is/are lawfully seized of said land in fee simple; that the grantors have good right and lawful authority to sell and convey said land, and hereby warrant the title to said land and will defend the same against the lawful claims of all persons whomsoever; and that said land is free of all encumbrances, except taxes accruing subsequent to December 31, 2001.

**IN WITNESS WHEREOF,** the said grantors have signed and sealed these presents the day and year first above written.

Signed, sealed and delivered in the presence of:

Signature
_MICHAEL O. ALBERTINE_
Printed Signature
Signature _Marilyn Y. Yunis_
_Marilyn Y. Yunis_
Printed Signature

X _William D Seagraves_ L.S.
**WILLIAM D. SEAGRAVES**

_Donna M Seagraves_ L.S.
**DONNA M. SEAGRAVES**

STATE OF FLORIDA
COUNTY OF BROWARD

# EX. "2"

02:34 PM, Broward County Commission, Doc. D  $1855.00 Deputy Clerk 2130

\

THIS INSTRUMENT PREPARED BY AND RETURN TO:
Robert L. Sader, Esq.
Sader & LeMaire, P.A.
1901 West Cypress Creek Road, Suite 415
Fort Lauderdale, Florida 33309
Property Appraisers Parcel Identification (Folio) Number: 9202-02-0720

# *WARRANTY DEED*

_____SPACE ABOVE THIS LINE FOR RECORDING DATA_____

**THIS WARRANTY DEED**, made the 17th day of October, 2005 by **Rudolph Sabatino and Ann M. Sabatino**, husband and wife and, whose post office address is 3200 N.E. 29TH Street, Fort Lauderdale, FL 33308 herein called the grantors, to **Luc D. Pierre and Julienne Pierre, husband and wife**, whose post office address is 212 S.W. 1st Court, Pompano Beach, FL 33060, hereinafter called the Grantees:
*(Wherever used herein the terms "grantor" and "grantee" include all the parties to this instrument and the heirs, legal representatives and assigns of individuals, and the successors and assigns of corporations)*

**W I T N E S S E T H:** That the grantors, for and in consideration of the sum of TEN AND 00/100'S ($10.00) Dollars and other valuable considerations, receipt whereof is hereby acknowledged, hereby grants, bargains, sells, aliens, remises, releases, conveys and confirms unto the grantee all that certain land situate in BROWARD County, State of Florida, viz.:

Lots 57 and 58, Block 4, AVONDALE, according to the Plat thereof as recorded in Plat Book 6, Page 29, of the Public Records of Broward County, Florida.

Subject to easements, restrictions and reservations of record and taxes for the year 2005 and thereafter.

**TOGETHER,** with all the tenements, hereditaments and appurtenances thereto belonging or in anywise appertaining.

**TO HAVE AND TO HOLD,** the same in fee simple forever.

**AND,** the grantors hereby covenant with said grantees that the grantors are lawfully seized of said land in fee simple; that the grantors have good right and lawful authority to sell and convey said land, and hereby warrant the title to said land and will defend the same against the lawful claims of all persons whomsoever; and that said land is free of all encumbrances, except taxes accruing subsequent to December 31, 2004.

**IN WITNESS WHEREOF,** the said grantors have signed and sealed these presents the day and year first above written.

Signed, sealed and delivered in the presence of:

_____
Witness #1 Signature

Michael R. LeMaire
Witness #1 Printed Name

_____
Witness #2 Signature

_____
Rudolph Sabatino

_____
Ann M. Sabatino

# EX. "3"

Broward County Commission
Deed Doc Stamps: $2170.00

This Document Prepared By:                                        )
Stephen L. Zimmerman, P.A.
Stephen L. Zimmerman, Esq.                                       )
737 E. Atlantic Blvd., Pompano Beach, FL 33060                    )
Return to:
Donald Buikus, Esq.
1402 N. State Rd. 7, Margate, FL 33063

Parcel ID Number: **494202020720**

# Warranty Deed

**This Indenture,** Made this ⎯27⎯ day of **March** ,2020 A.D., Between
**LUC D. PIERRE and JULIENNE PIERRE, husband and wife**

of the County of **Broward**                    , State of **Florida**                    , grantors, and
**4U2, INC., a Florida Corporation**

whose address is: **2880 NE 14th St., #913, Pompano Beach, FL 33062**

of the County of **Broward**          , State of     **Florida**          , grantee.
**Witnesseth** that the GRANTORS, for and in consideration of the sum of
**TEN DOLLARS ($10)**
and other good and valuable consideration to GRANTORS in hand paid by GRANTEE, the receipt whereof is hereby
acknowledged, have granted, bargained and sold to the said GRANTEE and GRANTEE'S heirs, successors and assigns
forever, the following described land, situate, lying and being in the County of     **Broward**
State of     **Florida**                    to wit:

Lots 57 and 58, Block 4, AVONDALE, according to the Plat thereof as recorded in Plat Book 6, Page 29, of
the Public Records of Broward County, Florida; together with that portion of vacated alley lying adjacent
alley thereto, as abandoned by Ordinance No. 93-49 recorded June 9, 1993 in Book 20762, Page 21.

Subject To: (a) Zoning, restrictions, prohibitions and other
requirements imposed by governmental authority, (b) Restrictions
and matters appearing on the Plat or otherwise common to the
subdivision, (c) taxes for the year 2020 and subsequent years.

# Warranty Deed - Page 2

Parcel ID Number: **494202020720**

**In Witness Whereof,** the grantors have hereunto set their hands and seals the day and year first above written.

**Signed, sealed and delivered in our presence:**

*Pauline Jacobsen*          *Luc Pierre* _(Seal)_

**Pauline Jacobsen**
Witness

                                  **LUC D. PIERRE**
                                  P.O. Address: 630 NW 37th St., Pompano Beach, FL 33064

                                  *Julienne Pierre* _(Seal)_

**Stephen L. Zimmerman**
Witness

                                  **JULIENNE PIERRE**
                                  P.O. Address: 630 NW 37th St., Pompano Beach, FL 33064

**State of Florida**
**County of Broward**

The foregoing instrument was acknowledged before me by means of ☑ physical presence or ☐ online notarization, this **27** day of March , 2020 , by LUC D. PIERRE and JULIENNE PIERRE, husband and wife

who are personally known to me or who have produced their
**Florida's driver license**
as identification

Printed Name:
Notary Public
My Commission Expires:

# EX. "4"

DONALD BUIKUS ESQ / IOTA TRUST ACCOUNT
File: 4U2 3318          3/30/2020          12330

Luc D. Pierre and Julienne Pierre          ***192,479.79
Buyer(s): 4U2, Inc.
Seller(s): Luc D. Pierre and Julienne Pierre

   Sales Proceeds                                  ***192,479.79

Sales Proceeds                                     ***192,479.79

DONALD BUIKUS ESQ / IOTA TRUST ACCOUNT
File: 4U2 3318          3/30/2020          12330

Luc D. Pierre and Julienne Pierre          ***192,479.79
Buyer(s): 4U2, Inc.
Seller(s): Luc D. Pierre and Julienne Pierre

   Sales Proceeds                                  ***192,479.79

Sales Proceeds                                     ***192,479.79

PAYMENT RECORD

J191842 (11/17)          100821           Rev 2/14

# EX. "5"



**BANK OF AMERICA**

P.O. Box 15284
Wilmington, DE 19850

Customer service information

LUC D PIERRE
JULIENNE PIERRE
630 NW 37TH ST
DEERFIELD BEACH, FL  33064-2737

🖥 Customer service: 1.800.432.1000

TDD/TTY users only: 1.800.288.4408

En Español: 1.800.688.6086

✉ bankofamerica.com

✉ Bank of America, N.A.
P.O. Box 25118
Tampa, FL 33622-5118

## Your Bank of America Advantage Savings

for March 11, 2020 to April 9, 2020                                     Account number: 8980

**LUC D PIERRE    JULIENNE PIERRE**

## Account summary

| | |
|---|---|
| Beginning balance on March 11, 2020 | $383.46 |
| Deposits and other additions | 192,481.22 |
| ATM and debit card subtractions | -0.00 |
| Other subtractions | -0.00 |
| Service fees | -8.00 |
| Ending balance on April 9, 2020 | $192,856.68 |

*Annual Percentage Yield Earned this statement period: 0.03%.*
*Interest Paid Year To Date: $1.57.*

LUC D PIERRE |        March 11, 2020 to April 9, 2020

# IMPORTANT INFORMATION:
## BANK DEPOSIT ACCOUNTS

How to Contact Us - You may call us at the telephone number listed on the front of this statement.

Updating your contact information - We encourage you to keep your contact information up-to-date. This includes address, email and phone number. If your information has changed, the easiest way to update it is by visiting the Help & Support tab of Online Banking.

Deposit agreement - When you opened your account, you received a deposit agreement and fee schedule and agreed that your account would be governed by the terms of these documents, as we may amend them from time to time. These documents are part of the contract for your deposit account and govern all transactions relating to your account, including all deposits and withdrawals. Copies of both the deposit agreement and fee schedule which contain the current version of the terms and conditions of your account relationship may be obtained at our financial centers.

Electronic transfers: In case of errors or questions about your electronic transfers - If you think your statement or receipt is wrong or you need more information about an electronic transfer (e.g., ATM transactions, direct deposits or withdrawals, point-of-sale transactions) on the statement or receipt, telephone or write us at the address and number listed on the front of this statement as soon as you can. We must hear from you no later than 60 days after we sent you the FIRST statement on which the error or problem appeared.

- -- Tell us your name and account number.
- -- Describe the error or transfer you are unsure about, and explain as clearly as you can why you believe there is an error or why you need more information.
- -- Tell us the dollar amount of the suspected error.

For consumer accounts used primarily for personal, family or household purposes, we will investigate your complaint and will correct any error promptly. If we take more than 10 business days (10 calendar days if you are a Massachusetts customer) (20 business days if you are a new customer, for electronic transfers occurring during the first 30 days after the first deposit is made to your account) to do this, we will provisionally credit your account for the amount you think is in error, so that you will have use of the money during the time it will take to complete our investigation.

For other accounts, we investigate, and if we find we have made an error, we credit your account at the conclusion of our investigation.

Reporting other problems - You must examine your statement carefully and promptly. You are in the best position to discover errors and unauthorized transactions on your account. If you fail to notify us in writing of suspected problems or an unauthorized transaction within the time period specified in the deposit agreement (which periods are no more than 60 days after we make the statement available to you and in some cases are 30 days or less), we are not liable to you and you agree to not make a claim against us, for the problems or unauthorized transactions.

Direct deposits - If you have arranged to have direct deposits made to your account at least once every 60 days from the same person or company, you may call us to find out if the deposit was made as scheduled. You may also review your activity online or visit a financial center for information.

© 2020 Bank of America Corporation

Bank of America, N.A. Member FDIC and  Equal Housing Lender

**BANK OF AMERICA** 

LUC D PIERRE  |  ⁄                              March 11, 2020 to April 9, 2020

## Deposits and other additions

| Date | Description | Amount |
|------|-------------|--------|
| 03/31/20 | Counter Credit | 192,479.79 |
| 04/09/20 | Interest Earned | 1.43 |
| **Total deposits and other additions** | | **$192,481.22** |

## Service fees

| Date | Transaction description | Amount |
|------|-------------------------|--------|
| 04/09/20 | Monthly Maintenance Fee | -8.00 |
| **Total service fees** | | **-$8.00** |

*Note your Ending Balance already reflects the subtraction of Service Fees.*

LUCD PIERRE |                        |   March 11, 2020 to April 9, 2020

This page intentionally left blank